UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Hoerchler, *Plaintiff*, v. CoreLogic Credco, LLC; Equifax Information Services LLC; Experian Information Solutions, Inc.; Trans Union LLC, *Defendants*. | Case No. 20-cv-3310 JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff David Hoerchler (Plaintiff) brings this action for damages against Defendant Equifax Information Services, LLC (Equifax); Experian Information Solutions, Inc. (Experian); Trans Union LLC (Trans Union); and CoreLogic Credco, LLC (CoreLogic) for violating the Fair Credit Reporting Act, 15 U.S.C. § 1681 (FCRA).

### VENUE, PARTIES, AND JURISDICTION

1. Venue lies properly in this district under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred here.

2. Subject matter jurisdiction in this Court is proper under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Plaintiff is an adult individual who at all relevant times resided in the Northern District of Illinois.

4. Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendants are persons as that term is defined by 15 U.S.C. § 1681a(b).

6. Each Defendant is a "consumer reporting agency" (CRA) as defined by 15 U.S.C. § 1681a(f) and each Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis as defined by 15 U.S.C. § 1681a(p).

7. On June 8, 2018 and thereafter, each Defendant prepared at least one "consumer report" concerning Plaintiff as defined by 15 U.S.C. § 1681a(d).

8. Each Defendant is authorized to do business in the State of Illinois and has substantial contacts in this District.

9. Equifax is a limited liability company organized under the laws of Georgia and has a principal place of business at 1550 Peachtree Street NE, Atlanta, Georgia 30309.

10. Experian is a corporation incorporated in the state of Ohio and has a principal place of business at 475 Anton Boulevard, Costa Mesa, CA 92626.

11. Trans Union is a limited liability company organized under the laws of Delaware and has a principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

12. CoreLogic is a "reseller" as that term is defined by 15 U.S.C. § 1681a(u), is a limited liability company organized under the laws of Delaware, and has a principal place of business at 10277 Scripps Ranch Blvd. San Diego, CA 92131.

## FACTS

### I. Obligations of Consumer Reporting Agencies

13. Defendants regularly assemble or evaluate and maintain information to provide consumer reports to third parties, and collect both public record information and credit account information on consumers residing nationwide.

14. The FCRA requires CRAs such as Defendants to "follow reasonable procedures to assure maximum possible accuracy of the information" in preparing a consumer report. 15 U.S.C. § 1681e(b).

15. The FCRA also obligates CRAs to follow certain procedures when a consumer notifies the CRA that the consumer disputes information in their file as inaccurate: CRAs must conduct a reasonable reinvestigation of the disputed information; CRAs must notify the source of the information of the dispute within five days; CRAs must provide the source with all relevant information received from the consumer; CRAs must review and consider all relevant information provided by the consumer in conducting the reinvestigation; CRAs must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified; CRAs must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report; CRAs must send a consumer written results of the reinvestigation and a credit report that is based on the consumer's file as revised as a result of the CRA's reinvestigation. 15 U.S.C. § 1681i(a).

## II. The "Mixed File" Problem

16. A major problem in the credit reporting industry is the mixed file. A mixed file occurs when one consumer's information is placed on the consumer report of another consumer.

17. Equifax, Experian, and Trans Union's procedures for matching consumer information to a consumer report often causes the mixing of one consumer with another.

18. Mixed files create a false description of a consumer's credit history and result in the consumer not obtaining credit or other benefits of our economy.

19. Consumers with mixed files often have their confidential personal and financial information wrongfully disclosed when the other consumer is seeking credit, and have their confidential information disclosed to the other person. This violates the consumer's privacy and also greatly increases their risk of identity theft.

### *III.  Defendants' Prior Knowledge of the "Mixed File" Problem*

20. Mixed files are not a new phenomenon: Equifax, Experian and Trans Union (the Big 3 CRAs) have been aware of mixed files for more than 35 years. *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir. 1982).

21. The Big 3 CRAs mix files even though every consumer has unique personal identifying information, such as a Social Security number. That is so because their systems allow information to be included in a consumer's file even when the Social Security number reported with the information is different from the Social Security number on the consumer's file.

22. The Big 3 CRAs know their matching procedures are causing inaccurate credit reports and mixed files.

23. In the 1990's, the Federal Trade Commission ("FTC") sued Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

24. In the 1990's, the Attorneys General of numerous of states sued Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

25. In 1991, TRW signed a Consent Order with the FTC. To prevent the occurrence or reoccurrence of a mixed file TRW agreed to use, for matching and identification purposes, a consumer's full identifying information, defined as full first and last name, full street address, zip code, year of birth, any generational designation and social security number.

26. In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states. Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. For example, procedures during the reinvestigation process include, assigning mixed file cases to Senior Investigators who, as appropriate, must pull

all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

27. In 1992, Equifax signed an Agreement of Assurances with the State Attorneys General, and agreed to take specific steps to prevent the occurrence of mixed files and to adopt procedures designed specifically to reinvestigate consumer disputes resulting from mixed files.

28. In 1995, Equifax signed a Consent Order with the FTC. Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

29. To prevent the occurrence of a mixed file, each of the Big 3 CRAs entered into agreements not to place information in a consumer's file (other than certain public record information) unless it has identified such information by at least two of the following identifiers: (i) the Consumer's name; (ii) the Consumer's Social Security Number, (iii) the Consumer's date of birth, or (iv) the Consumer's account number with a Subscriber or a similar identifier unique to the Consumer.

30. The Big 3 CRAs continue to repeatedly mix consumers' files despite agreements with the FTC and State Attorneys General and hundreds of lawsuits filed against them by consumers whose files have been mixed.

31. When those lawsuits have gone to trial, juries have found that the Big 3 CRAs willfully violated the accuracy and reinvestigation requirements in the FCRA—§§ 1681e(b) &

1681i—and awarded punitive damages as high as $18 million. Yet this "mixed file" problem persists.

33. For example, Equifax's matching logic mixed two consumers' files when only seven out of the nine digits of the two consumers' Social Security numbers matched. *Apodaca v. Discover Fin. Servs.,* 417 F. Supp. 2d 1220, 1224 (D.N.M. 2006).

33. In 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failed to unmix them despite Ms. Thomas' disputes. The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages. Despite the verdict, Trans Union continues to mix consumers.

34. In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes.

35. In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, U.S.D.C, District of Oregon, Case No. 3:11-CV-1231-BR, awarded Julie Miller more than $18 million in punitive damages for willfully violating the FCRA by mixing her file with another consumer and failing to unmix them despite Ms. Miller's disputes. Despite this verdict, and the verdict in the *Angela Williams* case, Equifax continues to mix consumers.

36. Over the last several years, Experian's national counsel, Jones Day, has represented Experian in hundreds of lawsuits where a mixed file claim was made.

37. Despite federal law, Congressional mandates, federal and state government enforcement actions, and hundreds of consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

38. CoreLogic has also been on notice for years that its policies were insufficient under the FCRA regarding the accuracy of its information: both through an action by the FTC which led to a consent order in 1998 as well as many private actions filed against it.

39. Despite knowing about the breadth and severity of the mixed file problem, Defendants do not maintain policies and procedures to ensure compliance with their duties under the FCRA.

### IV.     Facts Related to Plaintiff's "Mixed File"

40. From their infancy through middle age, Plaintiff David Hoerchler and his twin brother Daniel Hoerchler were extremely close and remained lifelong best friends until Daniel's death on June 17, 2015.

41. In late spring, 2018, Plaintiff and his wife Victoria decided to move forward with their long-held plans to retire and downsize by selling their family home in Illinois and purchasing a home in Wisconsin.

42. In the years prior and leading up to that moment, Plaintiff and his wife each had excellent credit history and consistently received FICO credit scores over 800.

43. On June 6, 2018, Plaintiff and Victoria met with a loan officer with JPMorgan Chase Bank, N.A. (Chase) and sought pre-approval for a home loan.

44. To evaluate Plaintiff's creditworthiness, on June 8, 2018, Chase obtained a consumer report from CoreLogic containing consumer reports from Equifax, Experian, and Trans Union for both Plaintiff and Victoria.

45. Under the section of information on Plaintiff provided by Equifax and Trans Union, it listed "NotScoredSubjectDeceased" as the "ExclusionReasonType" and did not provide a credit score.

46. In short, Equifax and Trans Union were incorrectly reporting that Plaintiff was deceased.

47. Equifax, Transunion, Experian, and CoreLogic also reported numerous other inaccurate items of information about Plaintiff, including more than 25 tradelines, multiple incorrect addresses, the wrong social security number, and employment information. Many of these inaccurate items belonged to his brother Daniel.

48. This mixing of information belonging to his late brother caused Plaintiff intense distress and caused him many times to recall the painful memory of his brother and best friend's untimely death.

49. CoreLogic reported the above information about Plaintiff despite receiving conflicting information from the credit bureaus regarding whether or not Plaintiff was deceased.

50. As a direct result of Defendants' inaccurate reporting, Chase rejected his application to be pre-approved for a mortgage loan.

### V. *Defendants' Acts Were Willful and Reckless*

51. Defendants' failures to comply with the FCRA were willful and reckless in that:

    a. In preparing consumer reports on Plaintiff, each of the Big 3 CRAs mixed Plaintiff's file despite knowing its procedures caused mixed and merged files and agreeing that it would change those procedures but failing to do so; despite each having notice that it was continuing to mix files through many lawsuits and regulatory actions; and despite each being found to have willfully

      violated the FCRA but refusing to change its procedures to comply with the FCRA.

   b.  Each of the Big 3 CRAs refused to unmix and correct Plaintiff's file after it knew it was mixed; refused to reinvestigate Plaintiff's disputes; and failed to follow the requirements of the FCRA in its handling of Plaintiff's disputes.

   c.  Each Defendant wrongfully furnished Daniel's information to persons who were seeking information on Plaintiff's credit history despite the conflicting information in its report being unequivocally erroneous on its face. CoreLogic in particular should have known from the face of its report—two CRAs reporting the consumer as deceased, and one reporting he is alive—that there was a serious problem.

## Count I
## Violation of the FCRA
## Against Equifax

52. Plaintiff realleges and incorporates by reference all preceding paragraphs.

53. On June 12, 2018, Chase sent Plaintiff a copy of the June 8, 2018 CoreLogic report with inaccurate information reported by all four defendants.

54. On June 14, 2018, Plaintiff called Equifax to dispute the inaccurate reporting. He gave his SSN to the representative who was unable to access his report. Plaintiff was then transferred to multiple individuals having to repeat his problem numerous times before being transferred to a representative named Laval. Laval listened to Plaintiff's story yet again, told him that he used Equifax's system to remove Daniel's information from his reports, gave Plaintiff a dispute confirmation number, and told Plaintiff he could follow the progress of his dispute on Equifax's website.

55. On June 18 and 20, 2018, Plaintiff sought to log in to Equifax's website to track the results of his dispute. He faced security questions regarding accounts that were not his. For example, the questions asked him about credit cards that were applied for in 1983 and 1986. Plaintiff had never applied for cards during that time. As a result, Plaintiff was unable to access any information through Equifax's website.

56. Later in June 2018, Plaintiff called Equifax again and gave the representative his confirmation number. That individual could not bring up Plaintiff's file and transferred him to his supervisor Fred. Fred was unable to bring up Plaintiff's file despite being given all of his personally identifying information such as his date of birth, home address, and social security number.

57. On June 22, 2018, Plaintiff sent a dispute letter to Equifax by USPS certified mail return receipt requested. His letter explained that Plaintiff's file was mixed with his brother Daniel's, gave Daniel's date of death and social security number, and explained that he was unable to log in to Equifax's website or receive confirmation of his dispute by telephone. The letter demands that Equifax remove Daniel's information from his report. Plaintiff included with that letter a copy of his social security card, Illinois driver's license, and a copy of the CoreLogic Merged Credit Report referenced above, with red ink and highlights identifying the inaccurate information on his report.

58. On July 10, 2018, Plaintiff called Equifax and confirmed that they received his dispute. A representative told Plaintiff that she could see his dispute and its attachments in her system and that she was processing his request. She gave Plaintiff two other confirmation numbers and told him he would be sent an email and a hard copy of his new report in the mail.

HOERCHLER V. CORELOGIC ET AL. — COMPLAINT

59. On July 13, 2018, Plaintiff received an email from Equifax regarding his dispute but again was unable to log in despite his belief that he answered all security questions correctly. On information and belief, this occurred because Equifax had not removed Daniel's information from his file and Equifax's security questions demanded account details and information belonging to Daniel.

60. On July 13, 2018, Plaintiff received dispute results from Equifax dated July 3, 2018. The dispute results state that Equifax updated his social security number and that is name was updated to "David L. Koerchler." Equifax gave no explanation why the first letter of Plaintiff's last name had been arbitrarily and incorrectly changed from H to K.

61. On July 23, 2018 Plaintiff received an Equifax Credit Report dated July 10, 2018, containing the following false information:

- His brother's SSN listed under "SSN";
- "Daniel L. Hoerchler" and "Dan L Hoerchler" under "Formerly Known As";
- 18 tradelines and accounts which are not his;
- Several accounts that did belong to him are listed as "Consumer Disputes - Reinvestigation in Process" even though he had never disputed those accounts.

62. On July 24, 2018, Plaintiff tried to access Equifax's dispute information online yet again, and this time could see that Equifax listed two new dispute confirmation numbers that did not correspond with any of his prior disputes. Moreover, under "results," they listed "mailed," even though Plaintiff received no mail regarding those dispute numbers.

63. From July 24 through the end of August, 2018, Plaintiff received several emails from Equifax regarding those two dispute numbers. Yet like before, he was unable to access any

of those results because the security questions asked of him demanded to know information about his late brother Daniel.

64. Plaintiff requested and received another copy of his file from Equifax dated April 1, 2019, which contained the following false information:

- Daniel's address on Longwood Drive in Sycamore, Illinois is listed as his former address;
- Kohls account ending in 3058, Sears account ending in 7221, and Shell account ending in 4298 that do not belong to him;
- His Cabela's and ExxonMobil accounts are listed as disputed but he never disputed them.

65. Despite Plaintiff's many oral and written requests to Equifax, Equifax failed to adequately reinvestigate his disputes, correct its false information, or properly respond to his disputes.

66. The above-referenced reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

67. Equifax negligently and/or willfully failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared regarding Plaintiff.

68. Equifax negligently and/or willfully failed to comply with the procedures in 15 U.S.C. § 1681i in regard to Plaintiff's disputes.

69. As a result of Equifax's failure to comply with the requirements of FCRA, Plaintiff has suffered, and continues to suffer, actual damages including but not limited to denial

of credit, damage to reputation, economic loss, reduced creditworthiness, invasion of privacy, interference with his normal activities, and severe mental anguish and emotional distress.

70. Under 15 U.S.C. §§ 1681n and o, Equifax is liable to Plaintiff for actual damages, punitive damages, attorney fees, and costs.

### Count II
### Violation of the FCRA
### Against Experian

71. Plaintiff realleges and incorporates by reference all preceding paragraphs.

72. On June 15, 2018, in response to reviewing his CoreLogic report, Plaintiff contacted Experian to dispute the inaccurate information. Experian instructed him to access his report on Experian's website.

73. On that same day Plaintiff obtained a copy of his credit report from Experian which contained the following false information:

- Daniel's Social Security Number;
- Daniel's address;
- An account that should have been associated only with Plaintiff's wife Victoria.

74. On June 21, 2018, Plaintiff called Experian and disputed the false information on his report over the phone with an Experian employee.

75. Plaintiff received an email from Experian the next day with dispute results which claims that they removed inaccurate information from his file.

76. On April 1, 2019, Plaintiff obtained his Experian report through annualcreditreport.com. That report misspells Plaintiff's last name as "Hoerehler" instead of "Hoerchler" throughout and lists two CBNA tradelines for accounts that Plaintiff does not recognize at all.

77. Despite Plaintiff's many oral and written requests to Experian, Experian failed to adequately reinvestigate his disputes, correct its false information, or properly respond to his disputes.

78. The above-referenced reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

79. Experian negligently and/or willfully failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared regarding Plaintiff.

80. Experian negligently and/or willfully failed to comply with the procedures in 15 U.S.C. § 1681i in regard to Plaintiff's disputes.

81. As a result of Experian's failure to comply with the requirements of FCRA, Plaintiff has suffered, and continues to suffer, actual damages including but not limited to denial of credit, damage to reputation, economic loss, reduced creditworthiness, invasion of privacy, interference with his normal activities, and severe mental anguish and emotional distress.

82. Under 15 U.S.C. §§ 1681n and o, Experian is liable to Plaintiff for actual damages, punitive damages, attorney's fees, and costs.

## Count III
## Violation of the FCRA
## Against Trans Union

83. Plaintiff realleges and incorporates by reference all preceding paragraphs.

84. On June 14, 2018, after reviewing a copy of his CoreLogic report, Plaintiff called Trans Union to dispute the inaccurate information. He was routed to their "Special Handling Desk," where an employee acknowledged they had mixed Daniel and Plaintiff's files.

85. Plaintiff received a dispute confirmation number and was told that he would receive a response to his dispute and a new copy of his report in the mail.

86. Plaintiff received a Trans Union letter and report dated June 20, 2018. The report contained only Plaintiff's SSN, address, name, and one account inquiry by "TU Consumer Relations." That Trans Union report lacked the several valid trade lines, addresses, employment history, and account inquiries that should appear on his file. The Trans Union letter did not contain results to Plaintiff's dispute, any explanation for why almost everything was removed from his file, or any indication whether Trans Union was still investigating or seeking to resolve their mix-up.

87. On June 27, 2018, and in response to receiving that incomplete report, Plaintiff sought to retrieve a copy of his report from Trans Union's website. He was redirected to annualcreditreport.com and managed to obtain a copy of his Trans Union report from that website.

88. The June 27, 2018 Trans Union report was also incomplete, lacking several trade lines that contained information about his home loan, employment information, and prior addresses.

89. The next day, Plaintiff visited Trans Union's website and managed to purchase his report for $1. The June 28, 2018 Trans Union report was similarly incomplete.

90. On April 1, 2019, Plaintiff obtained a new copy of his Trans Union report. That report appears to be in response to a dispute, as it states, "[w]e understand that recently something on your credit report did not seem right to you." That report misspells Plaintiff's last name as "Hoerehler" instead of "Hoerchler" throughout.

91. Despite Plaintiff's many oral and written requests to Trans Union, Trans Union failed to adequately reinvestigate his disputes, correct its false information, or properly respond to his disputes.

92. The above-referenced reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

93. Trans Union negligently and/or willfully failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared regarding Plaintiff.

94. Trans Union negligently and/or willfully failed to comply with the procedures in 15 U.S.C. § 1681i in regard to Plaintiff's disputes.

95. Trans Union failed to provide Plaintiff with a complete copy of his file as required by 15 U.S.C. § 1681g.

96. As a result of Trans Union's failure to comply with the requirements of FCRA, Plaintiff has suffered, and continues to suffer, actual damages including but not limited to denial of credit, damage to reputation, economic loss, reduced creditworthiness, invasion of privacy, interference with his normal activities, and severe mental anguish and emotional distress.

97. Under 15 U.S.C. §§ 1681n and o, Trans Union is liable to Plaintiff for actual damages, punitive damages, attorney's fees, and costs.

### Count IV
### Violation of the FCRA
### Against CoreLogic

98. Plaintiff realleges and incorporates by reference all preceding paragraphs.

99. The above-referenced reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

100. CoreLogic negligently and/or willfully failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared regarding Plaintiff.

101. CoreLogic knew or should have known from the face of the report it provided regarding Plaintiff that it was inaccurate and that its procedures were not reasonable: it reported that Plaintiff was both dead and alive at the same time; and it reported vastly different information from Equifax, Trans Union, and Experian—ostensibly about the same consumer.

102. As a result of CoreLogic's failure to comply with the requirements of FCRA, Plaintiff has suffered, and continues to suffer, actual damages including but not limited to denial of credit, damage to reputation, economic loss, reduced creditworthiness, invasion of privacy, interference with his normal activities, and severe mental anguish and emotional distress.

103. Under 15 U.S.C. §§ 1681n and o, CoreLogic is liable to Plaintiff for actual damages, punitive damages, attorney's fees, and costs.

**WHEREFORE**, Plaintiff David Hoerchler prays for individual judgments against Equifax, Experian, Trans Union and CoreLogic as follows:

   I.   Actual damages in an amount to be determined at trial;

   II.  Punitive damages in an amount to be determined at trial;

   III. Attorney's fees, costs, and expenses; and

   IV.  Such other and further relief this Court finds appropriate.

Respectfully submitted,

*s/Steven J. Uhrich*

Steven J. Uhrich (6310369)
UHRICH LAW, P.C.
1 N. State Street, Suite 1500
Chicago, IL 60602
p: 773-969-6337
f: 773-496-6968
steven@uhrichlawpc.com

Stephanie R. Tatar
TATAR LAW FIRM, APC

                                        3333 Warrenville Road, Suite 200
                                        Lisle, IL 60532
                                        p:312-423-4994
                                        stephanie@thetatarlawfirm.com

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

*s/Steven J. Uhrich*

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that any defendant named above take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described above, any third party associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any named defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any defendant.

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that counsel for Plaintiff claims a lien upon any recovery herein for any attorney's fees authorized by the above fee-shifting statutes or awarded by the Court. All rights relating to attorneys' fees have been assigned to counsel.