UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HOERCHLER,<br><br>  Plaintiff,<br><br>  v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>  Defendant. | No. 20 CV 3310<br><br>District Judge Lee<br><br>Magistrate Judge McShain |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Equifax Information Services, LLC's motion to compel plaintiff David Hoerchler to produce the terms of his settlement agreements with Experian Information Solutions, Inc., TransUnion LLC, and CoreLogic Credco, LLC (collectively, the "Settling Defendants"). [75]. Plaintiff opposes the motion. [88]. For the following reasons, the motion is denied without prejudice.

### Background

This is an action for damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681 (FCRA), in which plaintiff alleges that Equifax and the Settling Defendants violated the FCRA by negligently and/or willfully failing to use reasonable procedures to assure the maximum possible accuracy of plaintiff's consumer credit reports. [1] 7. Plaintiff and the Settling Defendants reached settlement agreements in April and September 2021, respectively, leaving Equifax as the only defendant in this case. [59, 82, 92].

According to the complaint, plaintiff and his wife decided in late Spring 2018 to sell their home in Illinois and purchase property in Wisconsin, a process that required plaintiff to obtain pre-approval for a mortgage loan from Chase Bank. [1] 7. As part of this process, Chase obtained plaintiff's credit history information from Equifax and the Settling Defendants. [*Id*.]. On June 12, 2018, Chase Bank sent plaintiff a copy of a CoreLogic report that contained credit history reports prepared by Equifax, TransUnion, and Experian. [1] 9. All three reports contained errors regarding plaintiff's credit history. [*Id*.] 8. Taken together, the errors included tradelines that did not belong to plaintiff, incorrect addresses, the wrong social security number, and inaccurate employment information. [*Id*.]. Two reports, from

Equifax and TransUnion, reported that plaintiff was deceased. [*Id.*] 8. These inaccuracies were caused by "file-mixing," an error where one consumer's information is placed on the consumer report of another consumer. [*Id.*] 3. In this case, information belonging to Daniel Hoerchler, plaintiff's deceased brother, was placed on plaintiff's credit report. [*Id.*] 8.

Plaintiff maintains that, while all file-mixing issues with Experian and TransUnion were resolved by June 22, 2018, his file-mixing issues with Equifax remained unresolved long after this date. [88] 2. After receiving the inaccurate report from Chase Bank, plaintiff called Equifax on June 14, 2018, to dispute its erroneous report that plaintiff was deceased. [1] 8-9. After speaking to multiple Equifax representatives, plaintiff was instructed to log into the Equifax website but was unable to do so because the security questions belonged to his deceased brother. [*Id.*] 10-11. Plaintiff called Equifax again, but the representative he spoke to was unable to pull his file up because plaintiff's information was mixed with that of his brother. [*Id.*]

On June 22, 2018, plaintiff sent Equifax a letter and supporting documentation by certified mail, requesting that Equifax correct the mixed-file issue. [1] 10. The next month, plaintiff called Equifax to confirm they had received his letter. [*Id.*] After finally receiving an email from Equifax in mid-July 2018 regarding the status of his complaint, plaintiff was still unable to log in and view his information. [*Id.*] 11.

By this point, plaintiff's issues with the Settling Defendants had been rectified for nearly one month, and Equifax was the only credit reporting agency with whom plaintiff could not resolve the file-mixing issues. Throughout July and August 2018, plaintiff received another inaccurate credit report, repeatedly called Equifax, repeatedly attempted to log into his account, and yet could not access his information. [*Id.*] 11-12. Nearly a year later, in April 2019, plaintiff requested another credit report from Equifax, but this report still contained multiple inaccuracies. [*Id.*] 12.

For his claim against Equifax, plaintiff alleges that Equifax's inaccurate consumer reports caused Chase Bank to reject plaintiff's application for a mortgage loan pre-approval. [*Id.*] 8, 12-13. Plaintiff further contends that Equifax's violations of FCRA caused him to suffer actual damages, including but not limited to denial of credit, damage to reputation, economic loss, reduced creditworthiness, invasion of privacy, interference with his normal activities, and severe mental anguish and emotional distress. [*Id.*] 13.

**Legal Standard**

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any

party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021). "In determining the scope of discovery under Rule 26, relevance is construed broadly and is 'not limited to issues raised by the pleadings[.]'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). At the same time, discovery must be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## Discussion

Equifax argues that it is entitled to discover the terms of plaintiff's settlement agreements with the Settling Defendants because the agreements are relevant "on the issue of offset and to avoid duplicative recovery under the one-satisfaction rule." [75-1] 7. According to Equifax, plaintiff is seeking to recover damages for a single, indivisible injury from multiple defendants. [*Id.*] 7-8. Because the one-satisfaction rule prohibits a plaintiff from recovering "overcompensation . . . for a single injury," Equifax contends that any amounts paid by the Settling Defendants to plaintiff should be credited against any judgment that may be entered against it. [*Id.*] 8-9. In the alternative, Equifax argues that the settlement agreements are relevant to facilitate future settlement discussion between the parties because the payments already made by the Settling Defendants reduce the overall value of plaintiff's case. [*Id.*] 13-14. Finally, Equifax argues that the details of the settlement agreements–particularly whether any of the payments were allocated toward attorney's fees and whether the agreements included equitable relief–are relevant to help Equifax assess how plaintiff is calculating his damages. [*Id.*] 14-16.

Plaintiff opposes this motion on four grounds: (1) the one-satisfaction rule does not apply to FCRA claims; (2) even assuming that the rule were generally applicable in an FCRA case, the rule does not apply to plaintiff's claim because he does not allege a single, indivisible injury caused by multiple defendants; (3) Equifax has not met its burden under Rule 26 to show that the settlement agreements are needed to facilitate further settlement discussions, particularly where the relief sought runs contrary to the policy encouraging settlement agreements and favoring their confidentiality; and (4) the motion is premature and should be deferred until after trial. [88] 2.

### A. Ripeness of the Motion

The Court first addresses plaintiff's argument that the motion is premature and should be deferred until a judgment of liability is entered against Equifax. According to plaintiff, even if the one-satisfaction rule applied in this case, the rule would only come into play at the damages phase of the case. [88] 15-16. Because there has been neither a trial nor a finding that Equifax is liable, plaintiff argues that

3

Equifax's request to discover the terms of plaintiff's settlement agreements with the Settling Defendants for purposes of reducing Equifax's liability to plaintiff is premature. [*Id.*] 16.

The Court agrees that, to the extent Equifax seeks the settlement agreements for purposes of establishing a credit against any judgment that plaintiff might obtain against it, the motion is premature. While there does not appear to be cases from the Seventh Circuit or the Northern District of Illinois addressing this issue, several persuasive cases have concluded that the applicability of a damages-related issue like the one-satisfaction rule are appropriately deferred until after trial. *See Zook v. Equifax Information Services, LLC*, No. 3:17-cv-2003-YY, 2018 WL 10604347, at *3 (D. Or. July 2, 2018) ("ordering discovery of settlement agreements before a jury has even awarded damages is premature"); *Peters v. Equifax Info. Servs. LLC*, 2013 WL 12169355, at *3 (C.D. Cal. Dec. 13, 2013) ("Any issue of double recovery or excess recovery can be resolved post-trial.").

However, to the extent that Equifax seeks the settlement agreements to facilitate further settlement negotiations between the parties, the Court finds that the motion is ripe for decision. The Court therefore turns to the parties' arguments respecting the applicability of the one-satisfaction rule to plaintiff's FCRA claim.

### B. The One-Satisfaction Rule and FCRA Cases

Equifax argues that "[c]ourts around the country have held that parties in the same position as Equifax here [are] entitled to offsets in cases alleging FCRA violations." [75-1] 9. This is so, Equifax maintains, because "the one-satisfaction rule . . . ensure[s] that Plaintiff does not obtain any more than what is owed to him for a single injury, such as emotional distress or the rejection of the Chase Bank mortgage." [*Id.*]. Plaintiff responds that the one-satisfaction rule does not apply to claims under the FCRA because the FCRA is a deterrent statute intended to prevent conduct detrimental to a credit-based economy, not a "common law tort meant merely to compensate injured plaintiffs." [88] 6. Appearing to recognize that no case within the Seventh Circuit has addressed this issue, plaintiff argues that cases from the Northern District of Illinois have found that "equitable doctrines much like the one satisfaction rule do not apply to the FCRA." [*Id.*] 8 (citing *Kay v. First Cont'l Trading, Inc.*, 966 F. Supp. 753 (N.D. Ill. 1997)). Plaintiff also contends that "[t]he overwhelming majority of district courts hold that federal common-law rules such as the one satisfaction rule, equitable offset, indemnity, and contribution do not apply to FCRA claims[.]" [*Id.*].

The one-satisfaction rule provides that "a plaintiff is entitled to only one satisfaction for a single injury." *Phoenix Bond & Indem. Co. v. Bridge*, No. 05 C 4095, 2012 WL 8706, at *1 (N.D. Ill. Jan. 2, 2012). The rule is "intended to prevent compensation in excess of the plaintiff's loss[.]" *BCS Servs., Inc. v. BG Invs., Inc.*, 728 F.3d 633, 641 (7th Cir. 2013). "Under the one-satisfaction rule, amounts received in

4

settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors." *Phoenix Bond & Indem.*, 2012 WL 8706, at *1.

The parties have not cited any cases from the Seventh Circuit or district courts within the Circuit that have considered whether the one-satisfaction rule applies in an FCRA case, and the Court's research uncovered no such cases. Case law from outside the Seventh Circuit establishes that most courts to have considered this question hold that the one-satisfaction rule, which is also referred to as an equitable offset, does not apply in FCRA cases. *See Zook*, 2018 WL 10604347, at *2-3 (D. Or. July 2, 2018) (the "weight of authority" from district courts nationwide holds that there is no equitable offset for causes of action under FCRA); *Contreras v. Kohl's Dep't Stores, Inc.*, EDCV 16-2678-JGB (KKx), 2017 WL 6372646, at *3 (C.D. Cal. Dec. 12, 2017) ("there is no equitable offset in FCRA cases"); *Vasquez-Estrada v. Collecto, Inc.*, No. 3:14-CV-01422-ST, 2015 WL 6163971, at *2 (D. Or. Oct. 20, 2015) ("Even if plaintiff sought duplicate damages, there is no express or implied right to an offset of amounts that plaintiff may have received in settlement from other FCRA defendants."). In contrast, the minority rule–represented in cases from the Northern District of Alabama–is that the one-satisfaction rule does apply to FCRA claims. *See Younger v. Experian Info. Sols., Inc.,* No. 2:15-cv-00952-SGC, 2018 WL 11271518, at *1-2 (N.D. Ala. Mar. 30, 2018); *Williams v. LVNV Funding, LLC,* No. 4:15-cv-2219-KOB, 2017 WL 1331014, at *1-2 (N.D. Ala. April 11, 2017). These cases relied on an Eleventh Circuit decision holding that the one-satisfaction rule applies to all federal statutory causes of action. *See Williams*, 2017 WL 1331014, at *2 (citing *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1278 n.7 (11th Cir. 2008)).

The Court need not definitively resolve this issue to rule on Equifax's motion. As the Court explains below, even if the one-satisfaction rule applied to FCRA claims generally, the rule would not apply in this case because plaintiff has alleged more than a single, indivisible injury.

### C. Single, Indivisible Injury

"The essential requirement for the 'one satisfaction rule' is that the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm." *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000); *accord Dalton v. Alston & Bird*, 741 F. Supp. 157, 159 (S.D. Ill. 1990) (one-satisfaction rule applies only "both the settlement and the judgment represent common damages").

In this case–particularly where dispositive motions have not been filed, the case has not proceeded to trial, and no factual findings relative to plaintiff's claim have been made–Equifax has not demonstrated that plaintiff's claim involves only a single, indivisible injury that was inflicted on him by Equifax and the Settling Defendants acting jointly. Rather, plaintiff's complaint and his declaration in

5

opposition to the motion to compel permit the conclusion that he suffered a series of discrete injuries over a period of nearly ten months.

Whether a claim involves a single, indivisible injury is necessarily a case-specific question, rather than a question that can be answered using a bright-line test. That said, the Court finds the Fourth Circuit's decision in *Sloane v. Equifax Information Services, LLC*, 510 F.3d 495 (4th Cir. 2007), instructive. In that case, the court held that the one-satisfaction rule did not apply to the plaintiff's FCRA claim because the claim was not limited to a single, indivisible injury. The evidence that the Fourth Circuit relied on to reach that conclusion is similar to the conduct on which plaintiff's claim against Equifax rests.

First, like the plaintiff in *Sloane*, plaintiff's encounters with Equifax post-date his encounters with the Settling Defendants and the Settling Defendants' resolution of their respective mistakes. *Compare Sloane*, 510 F.3d at 501 ("although some of Suzanne's interactions with Equifax overlapped with exchanges with other credit reporting agencies, her encounters with Equifax both predate and postdate these other exchanges"). All file-mixing issues with TransUnion and Experian were resolved by June 22, 2018, but this point marked just the beginning of plaintiff's issues with Equifax. [88] 2. Plaintiff subsequently engaged with Equifax numerous times via certified mail, over the phone, and via email. Each time plaintiff attempted to get his information corrected, Equifax failed to resolve the issue; even one year later, plaintiff's issues with Equifax were still unresolved. [1] 12.

Second, unique mistakes were made by each agency, and plaintiff is seeking damages from different defendants for different conduct, rather than damages stemming from the same conduct. *Compare Sloane*, 510 F.3d at 501 ("each agency produced reports with different inaccuracies, and each agency either corrected or exacerbated these mistakes independently of the others"). Equifax's and Experian's reports indicated that plaintiff was deceased, but when plaintiff contacted Experian, it fixed the mixed-file issue right away. [1] 13. For its part, TransUnion–in addition to mistakenly removing most of plaintiff's legitimate accounts from his file, many of which he needed for the home loan process–repeatedly misspelled plaintiff's last name. [*Id.*] 15. Equifax confronted plaintiff with security questions that asked about credit cards belonging to his deceased brother, and he was unable to access his file online. This particular error did not happen with any of the Settling Defendants. [*Id.*] 10. The number and type of mistakes made by each credit reporting agency varied, and each agency made discrete mistakes that affected Plaintiff in different ways. [88] 12; [88-1] 8; *see Sloane*, 510 F.3d at 501 ("the inaccuracies in Equifax's credit reports caused Suzanne discrete injuries independent of those caused by the other credit reporting agencies").

Third, each credit reporting agency either took corrective action or exacerbated mistakes independently of one another. TransUnion and Experian corrected their file-mixing mistakes independently of one another, on different dates, and long before

Equifax did so. *Sloane* is again instructive in this instance. Each credit reporting agency in that case produced reports with different inaccuracies at different times and attempted to correct their mistakes independently of one another. The Court found that this evidence supported the conclusion that the plaintiff suffered discrete injuries at the hands of each defendant. *Sloane*, 510 F.3d at 501. Likewise, in this case, while some of the errors reported by each agency persisted longer than the file-mixing issues, Equifax exacerbated its file-mixing mistakes for a lengthy period of time after the first inaccurate report was issued. [1] 13, 15. The agencies did not work in tandem with one another to either fix or exacerbate the mistakes because many of the mistakes were unique to the agencies themselves.

Finally, Equifax's discrete violations of the FCRA contributed to discrete injuries suffered by plaintiff. While Equifax contends that all defendants jointly contributed to the *same* harm, plaintiff interacted with Equifax more frequently and to a greater extent than with each of the Settling Defendants. He attempted to fix distinct errors, was prevented from fixing those errors in distinct ways, and each of these interactions caused separate and distinct instances of emotional harm, especially in the interactions that occurred long after his file-mixing issues were resolved with the Settling Defendants. [88-1] 6.

The Court further concludes that this case is distinguishable from *Younger*, on which Equifax relies. In that case, the district court found that the one-satisfaction rule applied because the plaintiff testified that "he could not distinguish the distress" caused by one defendant from that caused by another, and the plaintiff repeatedly attributed his injuries to "the entire case" or a "combination" of different things. *Younger*, 2018 WL 11271518, at *2. In contrast, plaintiff here has clearly explained, both in the complaint and in his declaration, that the nature and timeline of Equifax's violations and subsequent injuries were longer and more extensive than that of the Settling Defendants and demonstrated that Equifax's conduct caused separate and distinct injuries. [88-1] 8.

For these reasons, plaintiff's complaint and declaration permit the conclusion that he did not suffer a single, indivisible injury resulting from Equifax and Settling Defendants' conduct. The one-satisfaction rule is therefore inapplicable, and Equifax is not entitled–at least not at this juncture–to discover the terms of plaintiff's and the Settling Defendants' settlement agreements. This decision is without prejudice to Equifax's ability to renew the motion before the District Judge in the event a finding of liability is made.

### D. Use of Settlement Agreements to Facilitate Settlement

Finally, and for largely the same reasons set forth above, the Court concludes that Equifax has not met its burden under Rule 26 to show that the settlement agreements are relevant to future settlement negotiations between the parties.

"Whether a confidential settlement agreement should be disclosed to other parties in a multi-party case is governed by the familiar Rule 26(b)(1) discovery standards." *In re Dealer Mgmt. Sys. Antitrust Litig.*, Case No. 18 CV 864, 2019 WL 3884036, at *1 (N.D. Ill. Aug. 16, 2019). "Within this general framework, the party seeking disclosure of a confidential settlement agreement involving two other parties in the same case must articulate something more than a bald desire to see what the other parties said in their settlement agreement." *Id.*, at *2. "While there is no settlement privilege to overcome, in most cases, the movant articulates a specific basis as to why the settlement terms are relevant to a claim or defense in the continuing litigation so that production of the settlement agreement is proportional to the needs of the case and overrides the settling parties' interest in keeping their settlement confidential." *Id.*

Here, plaintiff's claim is not subject to the one-satisfaction rule because it does not involve a single, indivisible injury caused by multiple defendants. Consequently, Equifax has not shown that the payments made by the Settling Defendants would be relevant for settlement purposes because they would not reduce the value of plaintiff's case against Equifax, which concerns distinct injuries. Absent this showing, the Court concludes that Equifax's request "reflects [its] (understandable) desire to know what [plaintiff and the Settling Defendants] agreed to in their confidential settlement, but without the necessary facts to establish that disclosing those settlement terms is relevant and proportional to the needs of this case at this time." *In re Dealer Mgmt.*, 2019 WL 3884036, at *2. Furthermore, even if the settlement agreements were relevant to future settlement talks between plaintiff and Equifax (and they are not), there is no representation in Equifax's motion that it is currently engaged in settlement negotiations with plaintiff or that it intends or desires to resume those negotiations. *See id.*, at *3 (denying motion to compel production of settlement agreements from other parties in case where movants "do not say they currently are engaged in settlement discussions with CDK or anyone else such that they need to see the details of the CDK/Cox settlement agreement"). Instead, Equifax describes plaintiff's settlement demand as "exorbitant" and "unjustified," [75-1] 13, and implies that plaintiff's settlement tactics were not taken in good faith and are akin to blackmail, *see* [*id.*] 14. This is hardly indicative of a genuine desire to resume settlement negotiations in good faith and with an open mind.

8

## Conclusion

For the foregoing reasons, Equifax's motion to compel production of plaintiff's settlement agreements with the Settling Defendants [75] is denied. The denial is without prejudice to Equifax's ability to renew the motion in the event that Equifax is found liable to plaintiff or as otherwise directed by the District Judge.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 21, 2021**